■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ERIC JENKINS, Appellant. [923 NYS2d 706]—

Appeals by the defendant, by permission, (1) from an order of the Supreme Court, Queens County (Wong, J.), dated August 10, 2009, which denied, without a hearing, his motion pursuant to CPL 440.10 to vacate a judgment of the same court (Katz, J.), rendered December 1, 2003, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, based upon alleged violations of his rights pursuant to *Brady v Maryland* (373 US 83 [1963]), (2), as limited by his brief, from so much of an order of the same court (Wong, J.) dated September 18, 2009, as denied, without a hearing, those branches of his separate motion which were pursuant to CPL 440.10 to vacate the judgment based upon the alleged recantation of testimony of Garvey Napoleon and ineffective assistance of counsel, and (3) from an order of the same court dated September 29, 2009 (Wong, J.), which denied, after a hearing, that branch of the separate motion which was pursuant to

CPL 440.10 to vacate the judgment based upon the alleged recantation of testimony of Angelo Sean Gibson.

Ordered that the order dated August 10, 2009, is affirmed; and it is further,

Ordered that the order dated September 18, 2009, is reversed insofar as appealed from, on the law, and the matter is remitted to the Supreme Court, Queens County, before a different Justice, for a hearing and a new determination thereafter on those branches of the defendant's motion pursuant to CPL 440.10 which were to vacate the judgment based upon the alleged recantation of testimony of Garvey Napoleon and ineffective assistance of counsel; and it is further,

Ordered that the order dated September 29, 2009, is affirmed.

At approximately 8:45 P.M. on April 11, 1992, Michael Reese was shot and killed while he stood at a bus-stop shelter on Guy R. Brewer Boulevard in Queens. On May 12, 1992, the police arrested the defendant. The defendant's first trial commenced in May 1993. The first trial ended after the trial court declared a mistrial, based upon the prosecutor's failure to disclose a cooperation agreement with one of the People's witnesses. The second trial commenced in September 1993. At the first and second trials, Garvey Napoleon, the sole eyewitness, testified that he knew the defendant previously from the neighborhood where the shooting occurred. He further testified that, at the time of the shooting, he was on the opposite side of Guy R. Brewer Boulevard, and that he saw the defendant, along with two others, approach Reese and shoot him. At the conclusion of the second trial, the defendant was convicted of murder in the second degree and criminal possession of a weapon in the second degree. On direct appeal, this Court affirmed his convictions (*see People v Jenkins*, 230 AD2d 806 [1996]). In May 2001 the United States District Court for the Eastern District of New York (hereinafter the District Court) granted the defendant's petition for a writ of habeas corpus. In April 2002 the United States Court of Appeals for the Second Circuit affirmed the District Court's determination (*see Jenkins v Artuz*, 294 F3d 284 [2002]).

In 2002, prior to the commencement of the third trial, Napoleon informed the prosecutor that a police detective had shown him a single photo of the defendant and had pressured him into falsely testifying, both before the grand jury and at the first two trials, that he had known the defendant prior to the shooting. Upon learning this information, defense counsel moved to suppress Napoleon's identification of the defendant. After conducting an independent source hearing, the Supreme Court found

that Napoleon had an independent source for his identification of the defendant as the shooter. At his third trial, which commenced in January 2003, Napoleon again testified, identifying the defendant as the shooter. Angelo Sean Gibson testified for the first time, and testified for the prosecution. Gibson testified that the defendant had admitted to shooting Reese. The defendant's third trial ended with a hung jury.

The defendant's fourth trial, at which Napoleon and Gibson testified, resulted in the defendant's conviction of murder in the second degree and criminal possession of a weapon in the second degree. On direct appeal, this Court modified the judgment of conviction by reducing the sentences imposed, but otherwise affirmed (see People v Jenkins, 38 AD3d 566 [2007]). After the Court of Appeals denied the defendant's motion for leave to appeal from the decision and order of this Court (see People v Jenkins, 8 NY3d 986 [2007]), the defendant filed a second federal habeas corpus petition. The federal habeas proceeding was subsequently stayed. Thereafter, the defendant moved pursuant to CPL 440.10 to vacate the judgment of conviction based upon, inter alia, (1) Gibson's recantation of his trial testimony, (2) ineffective assistance of counsel due to trial counsel's failure to contact two witnesses who could have provided alibi and other exculpatory evidence, and (3) Napoleon's recantation of his trial testimony. In May 2009 the defendant filed a second motion pursuant to CPL 440.10 to vacate the judgment of conviction, based upon the prosecutor's failure to disclose Brady material (see Brady v Maryland, 373 US 83 [1963]) regarding Gibson and to correct Gibson's false testimony regarding his cooperation agreement. In orders dated August 10, 2009, and September 18, 2009, respectively, the Supreme Court denied, without a hearing, the defendant's motions in their entirety, except with respect to Gibson's recantation. After conducting a hearing, the Supreme Court, in an order dated September 29, 2009, denied his motion to vacate the judgment based upon Gibson's recantation.

The Supreme Court properly denied that branch of the defendant's motion which was pursuant to CPL 440.10 to vacate the judgment of conviction based upon Gibson's alleged recantation of his trial testimony. In support of that branch of his CPL 440.10 motion, the defendant presented Gibson's sworn written recantation, which was obtained by the defendant's investigators. In his recantation, Gibson stated, contrary to his trial testimony, that the defendant never made any admissions to him about shooting Reese. At the CPL 440.10 hearing, however, Gibson denied making those statements recanting his trial

testimony. Additionally, at the hearing, he confirmed the truthfulness of his trial testimony regarding his conversations with the defendant, in which the defendant allegedly admitted to shooting Reese. Therefore, as Gibson did not recant his trial testimony regarding the defendant's admissions at the hearing, the Supreme Court properly denied that branch of his CPL 440.10 motion which was based upon Gibson's recantation (*see People v Blake*, 219 AD2d 730, 731 [1995]). Although Gibson confirmed the truthfulness of certain portions of the recantation, this evidence, even if true, would have, at most, merely impeached or been contradictory to his trial testimony. Consequently, it would not constitute newly discovered evidence warranting a new trial (*see People v Salemi*, 309 NY 208, 215-216 [1955], *cert denied* 350 US 950 [1956]; *People v Richards*, 266 AD2d 714, 715 [1999]; *People v Milea*, 184 AD2d 791, 792 [1992]).

Contrary to the defendant's contentions, the Supreme Court also properly denied his separate motion pursuant to CPL 440.10 to vacate the judgment of conviction on the ground of *Brady* violations (*see Brady v Maryland*, 373 US 83 [1963]). The People have the obligation to disclose exculpatory evidence in their possession which is favorable to the defendant and material to guilt or innocence (*id.*; *see People v Scott*, 88 NY2d 888, 890 [1996]; *People v Steadman*, 82 NY2d 1, 7 [1993]). Moreover, the duty of disclosing exculpatory material extends to disclosure of evidence impeaching the credibility of a prosecution witness whose testimony may be determinative of guilt or innocence (*see Giglio v United States*, 405 US 150, 154-155 [1972]; *People v Baxley*, 84 NY2d 208, 213 [1994]). It is also clear that the "existence of an agreement between the prosecution and a witness, made to induce the testimony of the witness, is evidence which must be disclosed under *Brady* principles" (*People v Novoa*, 70 NY2d 490, 496 [1987], quoting *People v Cwikla*, 46 NY2d 434, 441 [1979]). Furthermore, the prosecutor has a duty to correct misstatements of a witness regarding the consideration given for that witness's testimony (*see People v Steadman*, 82 NY2d at 7; *People v Savvides*, 1 NY2d 554, 557 [1956]; *People v Schwartz*, 240 AD2d 600 [1997]). Here, however, it is undisputed that Gibson's cooperation agreement was disclosed to the defendant. Moreover, there is no merit to the defendant's contention that undisclosed information regarding Gibson's prior dealings and negotiations with the District Attorney's office at or during the first and second trials constitute *Brady* material, since this information could not be considered either exculpatory or material (*see People v Fuentes*, 12 NY3d 259, 263 [2009]; *People v Carnett*, 19 AD3d 703 [2005]; *People v Rushin*, 172 AD2d 571,

572 [1991]). Based on our review of the record, the defendant's contention that the prosecutor failed to correct Gibson's alleged misstatements regarding the consideration given for his testimony is also without merit.

However, the Supreme Court erred in denying, without a hearing, that branch of the defendant's motion which was pursuant to CPL 440.10 to vacate the judgment of conviction based upon Napoleon's recantation of his trial testimony. In his recantation, Napoleon, who was the sole eyewitness to the shooting, stated that he could not identify the shooter and that his identification of the defendant as the shooter was the product of improper police pressure. Although the Supreme Court found Napoleon's recantation to be entirely incredible, the totality of the circumstances presented here demonstrate that, in the absence of a hearing, such a determination was unwarranted.

Recantation evidence is considered to be the most unreliable form of evidence (*see People v Shilitano*, 218 NY 161, 170 [1916]). "Consideration of recantation evidence involves the following factors: (1) the inherent believability of the substance of the recanting testimony; (2) the witness's demeanor both at trial and at the evidentiary hearing; (3) the existence of evidence corroborating the trial testimony; (4) the reasons offered for both the trial testimony and the recantation; (5) the importance of facts established at trial as reaffirmed in the recantation; and (6) the relationship between the witness and defendant as related to a motive to lie" (*People v Wong*, 11 AD3d 724, 725-726 [2004], citing *People v Shilitano*, 218 NY at 170-172 [2004]).

Napoleon's recantation is not incredible on its face. In this regard, the credibility of his statement that he could not recognize the shooter, a person who was a stranger to him, is supported by portions of his trial testimony. At trial, he stated that, at the time of the shooting, he was on Guy R. Brewer Boulevard selling drugs and that he was "focusing" all around at "everything out there" because there was a police station nearby. Additionally, he testified that he was talking on a pay phone to a friend when he saw the first shot. He also stated that he saw the first and third shots, and the defendant standing over Reese as he fired the third shot. However, in a prior proceeding, Napolean testified that he only heard the last two shots, which is also what he stated in his recantation. Although he also testified that he "got a good look at [the defendant] as he was walking towards [Reese]," the prosecutor stipulated that, at the second trial in 1993, Napoleon was asked "were you able to see the faces of these three people?" and he answered:

"Not at the time when they were walking but when they reached the bus stop, yes." Therefore, his trial testimony indicates that his ability to identify the shooter may have been compromised since he was looking out for the police while selling drugs and talking on the pay phone to his friend. Moreover, Napoleon's difficulty in identifying the shooter was further increased since the distance between the southwest corner of 134th Avenue, where he was standing, and the bus stop on the east side of Guy R. Brewer Boulevard, where Reese was shot, was approximately 128 feet.

The undisputed evidence of police misconduct also indicates that Napoleon had a motive to lie at trial. In this regard, it has been established that a police detective pressured him into testifying falsely, before the grand jury and at the first two trials, that he knew the defendant prior to the shooting. It was not until 2002, almost 10 years after the defendant's initial conviction, that Napoleon admitted that this portion of his testimony had been false. In contrast, the record does not indicate that Napoleon had a motive to lie in his recantation or that he had any relationship with the defendant which would cause him to change his testimony. Moreover, Napoleon was the People's sole eyewitness, and his testimony identifying the defendant as the shooter was central to the People's case. Under these circumstances, the Supreme Court's denial, without a hearing, of that branch of the defendant's CPL 440.10 motion which was based upon Napoleon's recantation was an improvident exercise of discretion. Therefore, the matter must be remitted to the Supreme Court, Queens County, for a hearing on Napoleon's recantation (*see People v Shilitano*, 218 NY at 170-171; *People v Rodriguez*, 88 AD2d 890, 891 [1982]), and a new determination thereafter on that branch of the defendant's motion which was pursuant to CPL 440.10 to vacate the judgment based on that recantation. Since the Hearing Justice evinced a predisposition to reject or discredit the defendant's evidence with respect to the issue of witness recantation, the hearing shall be held before a different Justice.

Additionally, the Supreme Court erred in denying, without a hearing, that branch of the defendant's motion pursuant to CPL 440.10 which was to vacate the judgment of conviction on the ground that he was denied the effective assistance of counsel due to his trial counsel's failure to investigate two additional alibi witnesses. A defendant's right to effective assistance of counsel includes defense counsel's reasonable investigation and preparation of defense witnesses (*see People v Bennett*, 29 NY2d 462, 466 [1972]). Consequently, the failure to investigate wit-

nesses may amount to ineffective assistance of counsel (*see People v Nau*, 21 AD3d 568, 569 [2005]; *People v Bussey*, 6 AD3d 621, 623 [2004]; *People v Fogle*, 307 AD2d 299, 301 [2003]). In support of this branch of his motion, the defendant submitted the affidavits of the two potential witnesses, in which they stated that his trial counsel failed to contact or interview them. Significantly, in their affidavits, each witness recounted their recollection of the events surrounding the shooting, and stated that the defendant was inside of their family's apartment at the time of the shooting.

Since that branch of the defendant's motion which was based on ineffective assistance of trial counsel was supported by affidavits of witnesses who could have testified in support of an alibi defense, and it cannot be determined whether defendant's trial counsel had strategic or tactical reasons for failing to investigate them or failing to call them to testify, the Supreme Court erred in denying the motion without first conducting an evidentiary hearing (*see People v Nau*, 21 AD3d at 569; *People v Fogle*, 307 AD2d at 301; *People v Castricone*, 224 AD2d 1019, 1020 [1996]). Accordingly, the matter must also be remitted to the Supreme Court, Queens County, for that purpose and for a new determination thereafter on that branch of the defendant's motion.

The defendant's remaining contention, raising a claim of actual innocence, is not properly before this Court since he did not raise it before the Supreme Court. Therefore, we decline to decide the issue of whether a free-standing claim of actual innocence is cognizable under CPL 440.10 (1) (h) (*see People v Tankleff*, 49 AD3d 160, 182 [2007]). Skelos, J.P., Dickerson, Hall and Sgroi, JJ., concur.