THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DERRICK DEACON, Appellant. [946 NYS2d 613]—

Appeal by the defendant, by permission, from an order of the Supreme Court, Kings County (Tomei, J.), dated November 9, 2009, which, after a hearing, denied his motion pursuant to CPL 440.10 to vacate a judgment of the same court rendered January 12, 1990, convicting him of murder in the second degree (two counts), robbery in the first degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence, and for a new trial, on the ground of newly discovered evidence or, in the alternative, to vacate the judgment and dismiss the indictment on the ground of actual innocence.

Ordered that the order is modified, on the law, on the facts, and in the exercise of discretion, by deleting the provision thereof denying that branch of the defendant's motion which was pursuant to CPL 440.10 (1) (g) to vacate the judgment of conviction on the ground of newly discovered evidence and for a new trial, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed, the judgment is vacated, and a new trial is ordered.

On April 1, 1989, Anthony Wynn was robbed and shot dead in the hallway of a Flatbush apartment building. In connection therewith, the defendant was charged with two counts of murder in the second degree, as well as robbery in the first degree, criminal possession of a weapon in the second degree, and criminal possession of a concealed weapon in the third degree. The defendant was tried before a jury in December 1989. At trial, Colleen Campbell, a witness who had seen the fleeing assailant, testified pursuant to a subpoena served by the defense. During the police investigation, Campbell had described the assailant as approximately 19 years old and approximately 5' 7" tall. The defendant is six feet tall, and, at the time of this incident, was 34 years old. At trial, Campbell testified that while she knew the defendant for "[a]bout three years or more," she could not tell whether the defendant was the person she saw fleeing.

Campbell testified that she had "barely glimpsed the person, [and] didn't look" because "she was scared." The defendant was convicted of two counts of murder in the second degree, robbery in the first degree, and criminal possession of a weapon in the second degree. The defendant remains incarcerated.

In 2008, the defendant moved to vacate the judgment pursuant to CPL 440.10, seeking a new trial pursuant to CPL 440.10 (1) (g), or to vacate the judgment based on actual innocence. In support of the motion, the defendant submitted affidavits from Trevor Brown and Colleen Campbell.

According to his affidavit, in 2001, Brown became a "key cooperating witness" in a federal investigation of the activities of the "Patio Crew," a "violent Jamaican gang that controlled" the Flatbush neighborhood where the homicide occurred, and had testified against Emile Dixon, the "leader" of the Patio Crew. Defense counsel asserted that, in the course of an investigation of Dixon and other Patio Crew members by the Federal Bureau of Investigation, "Brown [had] told federal authorities during a June 2001 proffer session that another member of the Patio Crew, Paul Gary Watson, a.k.a. 'Pablo,' committed the murder of Anthony Wynn for which the defendant was wrongfully convicted." According to the defendant's counsel, Brown "state[d] that he was present when Watson planned to rob Wynn and that Watson returned to Brown's apartment immediately after the murder where Watson confessed to Brown that he killed Wynn . . . in the course of the planned robbery." The defendant's counsel argued that "Watson, unlike [the defendant], matches the description provided to the police on the day of the murder by Colleen Campbell . . . who saw the assailant run past her moments after the occurrence."

Campbell stated in her affidavit that the defendant was not the fleeing assailant whom she had seen. Campbell also stated that she had been afraid to testify as an eyewitness at the trial, due to her fear of the "real" perpetrator.

The Supreme Court conducted a full evidentiary hearing on the motion for a new trial based upon the aforementioned newly discovered evidence. At the hearing, Brown testified to the alleged facts of Watson's confession, as set forth in Brown's affidavit. Campbell testified that the defendant was not the fleeing assailant involved in this incident, but that she had been afraid to exonerate the defendant at trial due to her fear of neighborhood gang members, namely, those affiliated with the Patio Crew. Campbell also testified that she had initially told the police that the perpetrator was not the defendant, but that she had been pressured by police or prosecutors to provide "vague"

testimony at trial. Campbell testified that the police and/or prosecutors had threatened to "take away" her children if she did not cooperate with them.

During the hearing, the defendant moved to amend his motion to include the affidavit or testimony of Dexter Bailey. Bailey submitted an affidavit in which he stated that J.T. Dixon had confessed to having taken part in the robbery and murder of Wynn along with Watson. Bailey, another gang member who had also cooperated with the federal investigation of the Patio Crew, had not previously divulged this information to the prosecution. The Supreme Court denied the defendant's motion to include Bailey's testimony.

Following the evidentiary hearing, the Supreme Court denied the defendant's motion pursuant to CPL 440.10. The Supreme Court found, inter alia, that Brown's testimony with respect to Watson's alleged confession would not qualify as a statement against penal interest, as it was not established that Watson was unavailable, and there were insufficient indicia that Brown's testimony was reliable. The Supreme Court also found the testimony of Colleen Campbell to be inconsistent and not credible. Thus, the Supreme Court concluded that the evidence adduced at the hearing did not warrant a new trial. We disagree.

A motion to vacate a judgment of conviction upon the ground of newly discovered evidence rests within the discretion of the hearing court (*see People v Salemi*, 309 NY 208, 215 [1955], *cert denied* 350 US 950 [1956]; *People v Tankleff*, 49 AD3d 160, 178 [2007]). The "court must make its final decision based upon the likely cumulative effect of the new evidence had it been presented at trial" (*People v Bellamy*, 84 AD3d 1260, 1261 [2011]; *see* CPL 440.10 [1] [g]). In order to justify such vacatur, the evidence must fulfill all the following requirements: " '1. It must be such as will probably change the result if a new trial is granted; 2. It must have been discovered since the trial; 3. It must be such as could have not been discovered before the trial by the exercise of due diligence; 4. It must be material to the issue; 5. It must not be cumulative to the former issue; and, 6. It must not be merely impeaching or contradicting the former evidence' " (*People v Salemi*, 309 NY at 216, quoting *People v Priori*, 164 NY 459, 472 [1900]; *see* CPL 440.10 [1] [g]; *see also People v Malik*, 81 AD3d 981 [2011]).

The Supreme Court erred in concluding that the proffered testimony of Brown as to Watson's alleged confession could not be considered in support of the defendant's motion for a new trial under CPL 440.10 (1) (g) (*see People v Ortiz*, 81 AD3d 513,

514 [2011]; *People v Toussaint*, 74 AD3d 846, 846 [2010]; *People v Washington*, 31 AD3d 795 [2006]). "[B]efore statements of a nontestifying third party are admissible as a declaration against penal interest, the proponent must satisfy the court that four prerequisites are met: (1) the declarant must be unavailable to testify by reason of death, absence from the jurisdiction, or refusal to testify on constitutional grounds; (2) the declarant must be aware at the time of its making that the statement was contrary to his penal interest; (3) the declarant must have competent knowledge of the underlying facts; and (4) there must be sufficient competent evidence independent of the declaration to assure its trustworthiness and reliability" (*People v Brensic*, 70 NY2d 9, 15 [1987]). Third-party statements used against the accused may be admitted only when competent independent evidence is presented to establish that the declaration was spoken under circumstances which renders it highly probable that it is truthful (*id.* at 14-15). However, declarations which exculpate a defendant, such as those presented here, are subject to a more lenient standard, and will be found "sufficient if [they] establish[ ] a reasonable possibility that the statement might be true" (*People v Settles*, 46 NY2d 154, 169-170 [1978]; *see People v Fonfrias*, 204 AD2d 736, 738 [1994]). "Depriving a defendant of the opportunity to offer into evidence another person's admission to the crime with which he or she has been charged, even though that admission may only be offered as a hearsay statement, may deny a defendant his or her fundamental right to present a defense" (*People v Gibian*, 76 AD3d 583, 585 [2010], citing *Chambers v Mississippi*, 410 US 284, 302 [1973]).

The statement offered by Brown satisfied the four prerequisites. The defense established that Watson, despite the Supreme Court's finding to the contrary, was unavailable to testify because he had been deported to Jamaica (*see People v Luckey*, 73 AD3d 568, 569 [2010]; *see also People v Coleman*, 69 AD3d 430, 431 [2010]). Watson's declaration was clearly and unambiguously against his penal interest. Watson admitted his own participation in the attack, and there is a reasonable possibility that the declaration may be true. Watson's declaration was clearly exculpatory of the defendant. Further, we find that there were sufficient indicia that Brown's testimony was reliable. In this regard, we note that this Court "is not bound by the hearing court's factual determinations and may make its own credibility determinations" (*People v Tankleff*, 49 AD3d at 179).

We also find the recantation testimony of Campbell credible and compelling, and disagree with the Supreme Court's finding

that Campbell's testimony would not be likely to change the result upon a new trial, especially when viewed in conjunction with Brown's testimony. While recantation evidence is considered to be the most unreliable form of evidence (*see People v Shilitano*, 218 NY 161, 170 [1916]), its credibility may be established if certain factors are present, including its inherent believability, the demeanor of the recanting witness, the existence of corroborating evidence, the reasons offered for the recantation of the previous testimony, the relationship between the recanting witness and the defendant, and "the importance of facts established at trial as reaffirmed in the recantation" (*People v Wong*, 11 AD3d 724, 726 [2004], citing *People v Shilitano*, 218 NY at 170-172; *see People v Jenkins*, 84 AD3d 1403, 1407 [2011]).

Here, Campbell testified at trial that she had "barely glimpsed" the fleeing perpetrator. Campbell offered an equivocal answer when asked if she could identify that person as the defendant, stating, "if I say I saw this man, I would be telling a lie. I just barely glimpsed the person and the same way I told the police, I cannot tell if it was Dick, Tom or Harry." At the hearing, Campbell testified that she had seen the perpetrator, and that he was not the defendant. Campbell provided a credible reason as to why she originally testified that she could not exculpate the defendant, namely, that she feared repercussions from the gang members whose activities permeated her neighborhood and who were the focus of the aforementioned federal investigation. Indeed, the recantation further acquires "an aura of believability" because of the testimony of the other witnesses at the hearing and its consistency within the context of other matters contained in this record (*People v Wong*, 11 AD3d at 726), including, but not limited to, the fact that Campbell's initial pretrial description of the perpetrator as approximately 19 years old and 5' 7" tall matches a description of Watson, but not that of the defendant, who, at the time of the incident, was 34 years old and six feet tall. Moreover, there appears to be no relationship between Campbell and the defendant of a nature that would motivate Campbell to inappropriately come to the defendant's aid.

Further, we find that the likely cumulative effect of the newly discovered evidence and the recantation testimony established a reasonable probability that the result of a new trial would be a verdict more favorable to the defendant (*see* CPL 440.10 [1] [g]; *People v Bellamy*, 84 AD3d 1260 [2011]). Accordingly, the Supreme Court erred in denying that branch of the defendant's motion which was for a new trial based on newly discovered ev-

idence (*see People v Tankleff*, 49 AD3d 160 [2007]; *People v Wong*, 11 AD3d at 726).

Nonetheless, the Supreme Court properly denied that branch of the defendant's motion which was pursuant to CPL 440.10 (1) (h) to vacate the judgment of conviction and dismiss the indictment on the ground of actual innocence. The defendant did not establish entitlement to this relief. In making our determination, we do not decide whether, as the defendant contends, New York recognizes a free-standing claim of actual innocence that is cognizable by, or which may be addressed within the parameters of, CPL 440.10 (1) (h) (*see People v Tankleff*, 49 AD3d at 182). Angiolillo, J.P., Dickerson, Austin and Cohen, JJ., concur.