THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY DIPIPPO, Appellant. [918 NYS2d 136]—

In November 1995, a hunter discovered the remains of 12-year-old Josette Wright in a wooded area. Her family had reported her missing more than a year earlier, on October 4, 1994, after she failed to return home the evening before. In April 1996, the defendant and his codefendant, Anthony Krivak, were arrested in connection with Wright's death and indicted for murder in the second degree (felony murder) and rape in the first degree. The defendant and Krivak were tried separately, and both were convicted, after jury trials, on both counts. On July 11, 1997, the defendant was sentenced to concurrent terms of imprisonment of 25 years to life on the conviction of murder in the second degree, and 8¹/₃ to 25 years on the conviction of rape in the first degree (Braatz, J.). This Court affirmed the judgment on direct appeal (*see People v DiPippo*, 265 AD2d 340 [1999]). The defendant made three motions pursuant to CPL 440.10 to vacate the judgment, all of which were denied by the Supreme Court without a hearing, and in each instance, a Justice of this Court thereafter denied the defendant's application for leave to appeal. The order appealed from denied the defendant's fourth motion pursuant to CPL 440.10 to vacate the judgment. In support of his motion, the defendant contended that the judgment of conviction must be vacated on the ground that he was deprived of the effective assistance of counsel because his retained trial counsel operated under a conflict of interest. This conflict allegedly arose because the initial police investigation identified trial counsel's former client, Howard Gombert, who had a lengthy arrest record and whom counsel had previously represented on a rape charge, as a possible

suspect in the murder of Wright. Witness statements and police reports from that initial investigation indicated that Wright was last seen in a car driven by Gombert. The defendant contends that his trial counsel's failure to pursue the plausible defense of incriminating Gombert as the actual perpetrator in the rape and murder of Josette Wright demonstrated that the conflict affected his representation.

The Supreme Court initially denied the motion without a hearing, and this Court granted the defendant's application for leave to appeal. Before the appeal was fully perfected, the parties stipulated to withdraw the appeal and proceed with the evidentiary hearing on the issues raised in the leave application. By decision and order dated November 28, 2007, this Court granted the defendant's application to withdraw the appeal. Following an evidentiary hearing, the Supreme Court denied the defendant's motion to vacate the judgment. By decision, order and certificate dated December 24, 2009, a Justice of this Court granted the defendant's application for leave to appeal. We reverse.

In the order appealed from, the Supreme Court stated that it found "no evidence" that the fact that trial counsel's former client, Gombert, was identified as a possible suspect in the initial police investigation adversely affected counsel's representation of the defendant. Although the Supreme Court credited trial counsel's testimony that he perceived no conflict of interest at all, given the Supreme Court's determination that any conflict did not affect the defense, it found irrelevant trial counsel's failure to perceive any conflict.

In finding that trial counsel's representation of the defendant was not affected by any conflict of interest, the Supreme Court accepted trial counsel's hearing testimony that he first learned, midtrial, that the police had seized and dismantled the car owned by Gombert's girlfriend, which Gombert regularly used, and that trial counsel immediately requested that the trial court admit into evidence the photograph of the dismantled car to the jury to raise reasonable doubt, even though none of this was on the trial record. According to trial counsel, the trial court denied his request, a fact the Supreme Court found demonstrated that trial counsel "perceived no conflict of interest and was unaffected by any sense of loyalty to Howard Gombert." The Supreme Court also found trial counsel's admission that he had not attempted to present a third-party culpability defense of no moment, since there was insufficient evidence to allow such a defense, given that "no evidence connected [Gombert] with the commission of the crime." Rather, the Supreme Court found,

evidence regarding Gombert's possible involvement was mere speculation. Further, the Supreme Court noted that trial counsel presented a vigorous defense (asserting that Wright ran away from home on October 3, 1994, and died on a later date, and that the prosecution's chief eyewitness was unreliable and essentially adopted the police version of the crime), called 12 witnesses, including the defendant, and aggressively cross-examined the People's witnesses. In sum, the Supreme Court found that "it cannot be said that any of [trial counsel's] tactics were motivated by a desire to assist Gombert."

Effective assistance of counsel is "representation that is reasonably competent, conflict-free and singlemindedly devoted to the client's best interests" (*People v Longtin*, 92 NY2d 640, 644 [1998], *cert denied* 526 US 1114 [1999]; *see People v Harris*, 99 NY2d 202, 209 [2002]; *People v Berroa*, 99 NY2d 134, 139 [2002]). "That right is impaired when, absent a defendant's informed consent, defense counsel represents interests which are actually or potentially in conflict with those of the defendant. Conflicting interests may arise in the simultaneous representation of clients with adverse interests, or in successive representations because of an attorney's duty to maintain the former client's confidences even after representation has ceased" (*People v Berroa*, 99 NY2d at 139 [citations omitted]; *see People v Ennis*, 11 NY3d 403, 410 [2008], *cert denied* 556 US —, 129 S Ct 2383 [2009]). A defense attorney's previous representation of a client whose interests conflicted with those of a defendant involve a potential conflict of interest (*see People v Ennis*, 11 NY3d at 410; *People v Abar*, 99 NY2d 406, 409 [2003]). As pertinent to the matter at bar, under the state constitutional standard, "[t]o prevail on an ineffective assistance of counsel claim [based on successive representation], a defendant must first demonstrate the existence of a potential conflict of interest. Then, the defendant must show that the conduct of his defense was in fact affected by the operation of the conflict of interest, or that the conflict operated on the representation" (*People v Harris*, 99 NY2d at 210 [internal quotation marks and citations omitted]; *see People v Abar*, 99 NY2d at 409; *People v Ortiz*, 76 NY2d 652, 657 [1990]; *see also People v Longtin*, 92 NY2d at 644). In meeting such burden, a defendant need not show specific prejudice (*see People v Ortiz*, 76 NY2d at 657; *People v Alicea*, 61 NY2d 23, 30 n [1983]). "[I]n determining what motivated defense counsel, all of the circumstances surrounding the situation [may] be taken into account" (*People v Ennis*, 11 NY3d at 411).

In pertinent part, under the federal constitutional standard,

counsel is ineffective if defense counsel has an actual conflict of interest, meaning "a conflict *that affected counsel's perform-ance*—as opposed to a mere theoretical division of loyalties" (*Mickens v Taylor*, 535 US 162, 171 [2002]).

Here, trial counsel testified at the hearing that upon learning, midtrial, that his former client, Gombert, had initially been a suspect in the investigation, through photographs revealing that the police had dismantled a car which both belonged to Gombert's girlfriend and Gombert regularly used, he unsuccess-fully "tried to get [the photographs] before the jury" to raise reasonable doubt. Although the Supreme Court found trial counsel credible, the trial transcript contains no reference to trial counsel's alleged request to admit the photograph into evi-dence. Moreover, the parties stipulated that several months prior to trial, trial counsel was provided with discovery materi-als that included several witness statements and police reports which possibly implicated Gombert. Notably, when the defend-ant's attorney cross-examined the defendant's trial counsel at the hearing, he set forth a lengthy hypothetical based upon in-formation contained in the discovery materials which were the subject of the stipulation, including, among other things, a state-ment to the police from a witness who reported seeing Wright enter a car with Connecticut license plates, driven by Gombert, at 4:00 P.M. on the day Wright was last seen; that the owner of the red car was Gombert's girlfriend; that Gombert's girlfriend gave a statement to the police indicating that about two days af-ter Wright's missing person poster was posted, Gombert told her that he had seen Wright walking on Route 52, around the courthouse, a week earlier, that he did not tell his girlfriend where he dropped off Wright, and that afterwards, the girlfriend recalled thinking she had heard that Wright was last seen in a red car and that people would think it strange if Wright had last been seen in a red car and that Gombert had given Wright a ride in her (the girlfriend's) car; and that another witness gave a statement to the police indicating that Wright was going to start babysitting Gombert's daughter, but before that job was to start, Wright was reported missing. Although the hypotheti-cal was based on discovery materials that had been provided to trial counsel, trial counsel testified that he did not "know if [he] would have had a conflict" because he did not recall having such information prior to trial, but expressed certainty that he had read whatever discovery material had been turned over to the defense.

Under the circumstances, including the failure of the trial record to support trial counsel's hearing testimony and his re-

sponse to the lengthy hypothetical posed to him at the hearing by the defendant's attorney, we need not defer to the Supreme Court's determination finding trial counsel credible (*see People v Prochilo*, 41 NY2d 759, 761 [1977]; *People v Bhattacharjee*, 51 AD3d 684 [2008]; *People v Britton*, 49 AD3d 893, 894 [2008]; *People v Francis*, 44 AD3d 788, 789 [2007]; *cf. People v Knudsen*, 34 AD3d 496, 497 [2006]).

We further note that at the outset of the hearing, the parties stipulated that trial counsel failed to disclose his prior representation of Gombert to either the court or the defendant, a failure which precluded inquiry by the trial court regarding the defendant's awareness of the conflict of interest and the risks of proceeding (*see People v Gomberg*, 38 NY2d 307, 313-314 [1975]; *People v Adeola*, 51 AD3d 811 [2008]).

Trial counsel's failure to disclose his conflict must also be viewed in conjunction with his admission that he did not conduct any investigation into Gombert's possible involvement once he discovered that the car driven by Gombert had been seized and searched. For example, among other things, trial counsel did not conduct even a minimal investigation into Gombert by sending an investigator to ascertain Gombert's possible involvement. Had trial counsel disclosed the conflict to the defendant, it is likely that the defendant would have directed him to investigate Gombert.

In sum, contrary to the Supreme Court's determination, trial counsel's actions did not unambiguously demonstrate that he "perceived no conflict of interest and was unaffected by any sense of loyalty to Howard Gombert." Instead, his failure to disclose his prior representation of Gombert and his failure to investigate Gombert as the possible perpetrator demonstrated "that the conduct of his defense was in fact affected by the operation of the conflict of interest, or that the conflict operated on the representation" (*People v Harris*, 99 NY2d at 210 [internal quotation marks and citations omitted]; *see People v Ortiz*, 76 NY2d at 657; *see also People v Longtin*, 92 NY2d at 644). Under the circumstances, trial counsel's admitted failure to investigate Gombert leads to the conclusion that if the defendant had been represented by a different attorney, "the events would have unfolded differently" (*People v Mundo*, 11 AD3d 388, 389 [2004]). We therefore reverse the order, vacate the judgment of conviction, and remit the matter to the Supreme Court, Putnam County, for a new trial. Covello, J.P., Dickerson, Belen and Lott, JJ., concur.