■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WENDELL PAYTON, Appellant. [955 NYS2d 72]—

Appeal by the defendant (1) from a judgment of the County Court, Suffolk County (Hinrichs, J.), rendered October 6, 2008, convicting him of robbery in the second degree, upon a jury verdict, and imposing sentence, and (2) by permission, from so much of an order of the same court, dated June 7, 2010, as denied, without a hearing, that branch of his motion which was pursuant to CPL 440.10 to vacate the judgment of conviction.

Ordered that the judgment is affirmed; and it is further,

Ordered that the order is affirmed insofar as appealed from.

Viewing the evidence in the light most favorable to the prosecution, we find that the conviction of robbery in the second degree was supported by legally sufficient evidence (*see People v Contes*, 60 NY2d 620, 621 [1983]). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson*, 9 NY3d 342 [2007]), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo*, 2 NY3d 383, 410 [2004], *cert denied* 542 US 946 [2004]; *People v Bleakley*, 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero*, 7 NY3d 633 [2006]).

We find unpersuasive the defendant's contention that he was denied the effective assistance of counsel by reason of a purported conflict of interest on the part of his trial counsel. The record reveals that approximately 15 days prior to the commencement of the defendant's trial, the Suffolk County District Attorney's Office executed a search warrant at trial counsel's law office. Approximately two months after the defendant's conviction, but before sentencing, the trial court was made aware of the pending investigation and, at the defendant's request, assigned new counsel to represent the defendant. Thereafter, the defendant moved pursuant to CPL 330.30 to set

aside the verdict on the ground that his trial counsel had labored under a conflict of interest. The trial court denied the motion. Following the imposition of sentence, the defendant eventually moved pursuant to CPL 440.10 to vacate the judgment of conviction, again on the ground of conflict of interest, and again the motion was denied.

"The right to effective counsel ensures not only meaningful representation but also the assistance of counsel that is 'conflict-free and singlemindedly devoted to the client's best interests' " (*People v Berroa*, 99 NY2d 134, 139 [2002], quoting *People v Longtin*, 92 NY2d 640, 644 [1998], *cert denied* 526 US 1114 [1999]). Accordingly, "where a defendant makes a conflict-based claim of ineffective assistance of counsel, two questions arise. First, the court must determine whether there was a potential conflict of interest (*People v Abar*, 99 NY2d 406, 409 [2003]). Second, a 'defendant must show that the conduct of his defense was in fact affected by the operation of the conflict of interest, or that the conflict operated on the representation' (*People v Ortiz*, 76 NY2d 652, 657 [1990] [internal quotation marks omitted])" (*People v Konstantinides*, 14 NY3d 1, 10 [2009]; *see People v Harris*, 99 NY2d 202, 210 [2002]; *People v Tisone*, 85 AD3d 1066 [2011]; *People v Guadmuz*, 63 AD3d 1178 [2009]). Here, even if it is assumed that trial counsel was aware that he was a target of the investigation so as to satisfy the first prong of the foregoing inquiry, the defendant has failed to come forward with any evidence establishing that the conduct of his defense was in fact affected by the operation of the conflict of interest, or that the conflict operated on the representation. Therefore, his contention is unavailing (*see People v Konstantinides*, 14 NY3d at 14; *see also People v Solomon*, 20 NY3d 91 [2012]; *People v Guadmuz*, 63 AD3d 1178 [2009]). In this regard, while we share our dissenting colleague's concern that a criminal defendant's right to the effective assistance of counsel never be compromised by the personal interests of the attorney representing him, we decline to adopt the per se rule advocated by the dissent, which would require reversal absent a showing of any effect which the conflict may have had on the representation, as expressly contrary to clear and established precedent (*see People v Konstantinides*, 14 NY3d at 14; *People v Abar*, 99 NY2d at 411). Furthermore, the dissent's suggestion that the defendant's trial counsel in this case procured a more favorable disposition with regard to his own charges by failing to zealously represent the defendant at trial is unsupported by the record and is manifestly inconsistent with the evidence of meaningful representation afforded by trial counsel, who provided vigorous and competent representation to the defendant at every stage of the proceed-

ings (*see People v Thomas*, 201 AD2d 687, 688 [1994]; *People v Carney*, 179 AD2d 818, 819 [1992]).

The defendant has failed to preserve for appellate review his contention that the sentence imposed by the County Court improperly penalized him for exercising his right to a jury trial, because he did not set forth the issue on the record at the time of sentencing (*see People v Hurley*, 75 NY2d 887, 888 [1990]; *People v Garcia*, 66 AD3d 699, 701 [2009]; *People v Smith*, 49 AD3d 904, 906 [2008]; *People v Gillian*, 28 AD3d 577 [2006], *affd* 8 NY3d 85 [2006]; *People v Chapero*, 23 AD3d 492, 493 [2005]). In any event, contrary to the defendant's contention, the fact that the sentence imposed after trial was greater than the term offered during plea negotiations is no indication that the defendant was punished for asserting his right to proceed to trial (*see People v Pena*, 50 NY2d 400, 411 [1980], *cert denied* 449 US 1087 [1981]; *People v Brock*, 69 AD3d 644 [2010]; *People v DeHaney*, 66 AD3d 1040, 1041 [2009]; *People v Garcia*, 66 AD3d at 701; *People v Smith*, 49 AD3d 904, 906 [2008]). Moreover, the sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]). Mastro, J.P., Dillon, and Sgroi , JJ., concur.

Miller, J. (dissenting). I respectfully dissent and vote to reverse the order dated June 7, 2010, grant that branch of the defendant's motion which was to vacate the judgment of conviction, and dismiss the appeal from the judgment as academic in light of the determination of the appeal from the order.

The defendant was arrested on April 6, 2007, and later charged with one count of robbery in the second degree. On June 20, 2007, pursuant to County Law article 18-B, an attorney (hereinafter trial counsel) was assigned to represent him in his defense. The prosecution of the defendant's case was handled by the Office of the Suffolk County District Attorney.

The defendant's trial began on February 6, 2008, in the County Court, Suffolk County. Unbeknownst to the defendant, some days earlier, on January 23, 2008, the Office of the Suffolk County District Attorney executed a search warrant on the law office of trial counsel. The record does not reveal what was seized from trial counsel's law office.

Neither trial counsel nor the Office of the Suffolk County District Attorney disclosed to the defendant—or to the trial court—the fact that a search warrant had been executed on trial counsel's office days before the defendant's trial began. The trial proceeded to verdict with the defendant represented by trial counsel. A verdict was returned on February 19, 2008, finding the defendant guilty of one count of robbery in the second degree.

The defendant appeared for sentencing on April 16, 2008. When the matter was called, the court stated that since the date of the verdict, it had "learned of a potential conflict of interest" that had arisen with respect to trial counsel's continued representation of the defendant. Neither the court, the prosecutor, nor trial counsel disclosed the nature of the conflict on the record. Rather, the court merely stated that it had conducted an off-the-record conference in its chambers earlier that morning with trial counsel and the assistant district attorney. The court then asked trial counsel if he had discussed the matter with the defendant after the conference, and trial counsel said "Yes."

The court advised the defendant that, "under these circumstances," it was "prepared to assign a new attorney" to represent him. The defendant stated that he wanted the court to "[a]ssign a new lawyer right now." Trial counsel was relieved and a new attorney was assigned to represent the defendant.

Prior to the rescheduled sentencing date, the defendant, by his new attorney, moved to set aside the verdict pursuant to CPL 330.30 (1). The defendant alleged that during the course of his trial, trial counsel had been the subject of a criminal investigation by the same prosecutor's office that was prosecuting his case. The defendant contended that the criminal investigation caused trial counsel's interests to conflict with his own and that the resulting division of loyalty deprived him of his right to the effective assistance of counsel. The defendant argued that he never waived his right to conflict-free representation and that the failure to hold a hearing to determine the extent of the conflict constituted reversible error.

The People opposed the defendant's CPL 330.30 motion. The People did not deny that a search warrant had been executed on trial counsel's office, but argued this contention could not be considered on a CPL 330.30 motion because the defendant had failed to preserve this contention for appellate review since he did not object to the alleged conflict until after he had been assigned new counsel. The People further argued that the motion should be denied on the ground that it involved matters that were dehors the record and thus were properly the subject of a CPL article 440 motion rather than a motion pursuant to CPL 330.30.

In an order dated October 3, 2008, the County Court denied the defendant's CPL 330.30 motion. The court determined that "there [was] not nearly enough information . . . either on or off the record to conclude that an actual conflict existed." The court stated that the execution of a search warrant on trial counsel's office merely created a potential conflict of interest

and that the defendant was therefore required to demonstrate that this potential conflict actually affected or operated upon the representation. The court concluded that the defendant failed to sustain his burden and, "having considered the fully competent manner in which trial counsel represented defendant at trial, the Court specifically [held] that trial counsel was not ineffective."

At the rescheduled sentencing on October 6, 2008, the defendant's new attorney sought to reargue the issue. He again asserted that the court was required to hold an evidentiary hearing to resolve the factual issues raised by the defendant's contentions. The defendant's new attorney noted that an affidavit from trial counsel was not included in the defendant's motion papers because trial counsel's own defense attorney would not permit him to make any statement "during the pending investigation." The County Court denied this application and the defendant was sentenced to, inter alia, a determinate term of 13 years of imprisonment.

Approximately two months later, on December 9, 2008, trial counsel was summarily arrested and charged, by felony complaint, with criminal possession of a controlled substance in the fifth degree. Later that same day, trial counsel appeared before the County Court, Suffolk County. An Assistant District Attorney informed the court that the People had already "entered into a plea agreement with [trial counsel]." The terms of this agreement were not set forth on the record and the prosecutor asked the court to "seal [the plea agreement] in the court file." Trial counsel joined in this request, and the People's application to seal the plea agreement was granted by the County Court.

Trial counsel thereafter pleaded guilty to criminal possession of a controlled substance in the fifth degree by admitting that sometime in the period between January and December 2004, he possessed at least 500 milligrams of cocaine. Trial counsel's plea was accepted by the County Court. The People consented to trial counsel's immediate release on his own recognizance and consented to waiving the preparation of a presentence report.

Trial counsel was sentenced on April 9, 2009. The People requested that trial counsel be sentenced to a conditional discharge. Although acknowledging that under normal circumstances, certain mandatory conditions would be imposed in connection with a conditional discharge, the County Court, with the consent of the People, found "compelling circumstances" warranting a waiver of the mandatory suspension of trial

counsel's driver's license. The compelling circumstances warranting this waiver were not identified on the record. The court also waived, on consent of the People, any condition requiring trial counsel to remain in the jurisdiction of the court. In addition, the court granted trial counsel a certificate of relief from civil disabilities, again with the People's consent.

Meanwhile, the defendant in this case appealed to this Court from the judgment of conviction rendered October 6, 2008. The defendant moved in this Court to enlarge the judgment roll so as to include certain materials relating to the criminal action against trial counsel in the Suffolk County Court. By decision and order on motion dated March 1, 2010, this Court denied the defendant's motion without prejudice to seeking relief pursuant to CPL article 440.

The defendant thereafter moved in the Suffolk County Court for an order vacating the judgment of conviction pursuant to CPL 440.10 (1) (h) on the grounds that it was obtained in violation of the New York State and Federal Constitutions. Alternatively, the defendant sought an opportunity to obtain, inter alia, documents relating to trial counsel's criminal case which were still held under seal and which could be presented in support of his position. The defendant's motion papers included, inter alia, the December 9, 2008, felony complaint brought against trial counsel, the transcript of his plea of guilty, and the transcript of his sentencing.

The People opposed the defendant's CPL 440.10 motion to vacate the judgment. The People acknowledged that trial counsel "had become the subject of an ongoing criminal investigation, which later resulted in his December 2008 arrest . . . and guilty plea." However, the People noted that the defendant was "again" attempting to demonstrate that his attorney had operated under a conflict of interest, but that there was "no evidence or indication that [trial counsel's] representation of defendant was in any way compromised by his own developing legal entanglements." The People further asserted that there was no post-conviction mechanism by which the defendant could obtain the sealed documents pertaining to trial counsel's criminal case, as there was no constitutional right to such discovery.

In an order dated June 7, 2010, the County Court denied the defendant's CPL 440.10 motion in its entirety. The court did not hold a hearing on the matter. It concluded that denial of the motion was appropriate under CPL 440.10 (3) (b), since it had previously decided the issue of whether trial counsel had operated under a conflict of interest during his representation of the

defendant in the context of the defendant's CPL 330.30 motion. The court also found that it was barred from reconsidering the issue under the doctrine of "law of the case."

Alternatively, the court determined that the defendant had failed to set forth any legal basis that could serve as grounds for granting the motion since the defendant failed to allege that his defense was affected or otherwise operated upon by the alleged conflict. The court further determined that the defendant's moving papers failed to substantiate the facts alleged therein and that there was "no reasonable possibility that [the] allegation[s] [were] true."

The defendant subsequently applied to this Court for a certificate granting leave to appeal from the order denying his CPL 440.10 motion. This Court granted the defendant's application and calendared the defendant's appeal from the order denying his motion to vacate the judgment with his direct appeal from the judgment of conviction. On these appeals, the defendant contends, inter alia, that the judgment convicting him of robbery in the second degree should be reversed since he was deprived of his right to effective assistance of counsel. The defendant also contends that the County Court erred in denying, without a hearing, that branch of his motion which was pursuant to CPL 440.10 to vacate the judgment of conviction.

I vote to reverse the order which denied the defendant's motion to vacate the judgment pursuant to CPL article 440 on the ground that the defendant was deprived of the effective assistance of counsel under both the Federal and State Constitutions and would grant the defendant a new trial. Accordingly, I respectfully dissent.

" 'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have' " (*United States v Cronic*, 466 US 648, 654 [1984], quoting Walter V. Schaefer, *Federalism and State Criminal Procedure*, 70 Harv L Rev 1, 8 [1956]). Both the Constitution of the United States and the New York State Constitution ensure the right to effective assistance of counsel (*see* US Const 6th Amend; NY Const, art I, § 6; *see also* CPL 210.15 [2]). Under the State and Federal Constitutions, effective assistance of counsel is defined as "representation that is reasonably competent, conflict-free and singlemindedly devoted to the client's best interests" (*People v Harris*, 99 NY2d 202, 209 [2002] [internal quotation marks omitted]; *see People v Ennis*, 11 NY3d 403, 410 [2008], *cert denied* 556 US 1240 [2009]; *People v Ortiz*, 76 NY2d 652, 656 [1990]; *see also Wood v Georgia*, 450 US 261, 271 [1981]).

Under the federal standard for ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Strickland v Washington*, 466 US 668, 694 [1984]). Under the state standard, the constitutional requirements for the effective assistance of counsel "are met when the defense attorney provides meaningful representation" (*People v Stultz*, 2 NY3d 277, 279 [2004] [internal quotation marks omitted]; *see People v Baldi*, 54 NY2d 137 [1981]). The state standard has been called "somewhat more favorable to defendants" (*People v Turner*, 5 NY3d 476, 480 [2005]), because its "prejudice component focuses on the fairness of the process as a whole rather than its particular impact on the outcome of the case" (*People v Caban*, 5 NY3d 143, 156 [2005] [internal quotation marks omitted]; *see People v Ozuna*, 7 NY3d 913, 915 [2006]; *see also Rosario v Ercole*, 601 F3d 118, 124-125 [2010], *cert denied* 563 US —, 131 S Ct 2901 [2011]).

However, federal courts interpreting the Sixth Amendment "have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect" where "the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary" (*Mickens v Taylor*, 535 US 162, 166 [2002]; *cf. Chapman v California*, 386 US 18, 43 [1967, Stewart, J., concurring] [outlining instances where constitutional violations result in reversal "even if no particular prejudice is shown and even if the defendant was clearly guilty"]).

Thus, under the federal standard for ineffective assistance of counsel, where a defendant has been completely denied an attorney at a critical stage of the proceedings, courts have not required a defendant to show that such denial had a probable effect upon the outcome of his or her case (*see Gideon v Wainwright*, 372 US 335 [1963]; *Hamilton v Alabama*, 368 US 52, 55 [1961]). Stated more broadly, "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice" (*Strickland v Washington*, 466 US at 692; *see Flanagan v United States*, 465 US 259, 268 [1984]; *Powell v Alabama*, 287 US 45, 58 [1932]).

The United States Supreme Court has also presumed prejudice in certain cases where a defendant is represented by an attorney burdened by a conflict of interest (*see Cuyler v Sullivan*, 446 US 335, 349-350 [1980]; *Holloway v Arkansas*, 435 US 475, 489 [1978]; *Glasser v United States*, 315 US 60, 75-76 [1942]).

Generally, "[a] conflict of interest is involved if there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests or by the lawyer's duties to another current client, a former client, or a third person" (Restatement [Third] of the Law Governing Lawyers § 121; *see* ABA Annotated Model Rules of Professional Conduct, rules 1.7, 1.9; Rules of Professional Conduct [22 NYCRR 1200.0] rules 1.7, 1.9).

The United States Supreme Court has recognized that some conflicts of interest present a "high probability of prejudice" (*Mickens v Taylor*, 535 US at 175; *see Torres v Donnelly*, 554 F3d 322, 326 [2d Cir 2009]). The Court has also recognized that "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests" (*Strickland v Washington*, 466 US at 692; *see Glasser v United States*, 315 US at 75-76), and that it is similarly difficult to prove any such prejudicial effect (*see Cuyler v Sullivan*, 446 US at 348-349; *Holloway v Arkansas*, 435 US at 490-491; *see also Mickens v Taylor*, 535 US at 175).

Given the difficulty of proving and measuring the prejudicial effect of attorney conflicts and the high probability of prejudice, the United States Supreme Court has opined that "it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest" (*Strickland v Washington*, 466 US at 692). Accordingly, "[p]rejudice is presumed . . . if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance' " (*id*. at 692, quoting *Cuyler v Sullivan*, 446 US at 350; *see Mickens v Taylor*, 535 US at 173-174; *see also* 3 Wayne R. LaFave, Criminal Procedure § 11.9 [d] [3d ed]). Under such circumstances, it is "at once difficult and unnecessary . . . to allow courts to indulge in nice calculations as to the amount of prejudice" as "[t]he right to have the assistance of counsel is too fundamental and absolute" (*Glasser v United States*, 315 US at 76). Thus, there is no need to determine "the precise degree of prejudice" sustained by a defendant (*id*. at 75).

However, in *Mickens v Taylor* (535 US at 174-175), the Court noted that it had only applied a presumption of prejudice to cases involving multiple, concurrent representation of clients with conflicting interests. The Court recognized that conflicts of interest may arise in a variety of circumstances, for instance, during successive representation of clients with conflicting interests, or when an attorney's own interests conflict with those of a client (*id*.). The Court questioned whether a presump-

tion of prejudice should apply to all forms of attorney conflicts and made it clear that it had not yet addressed the issue of whether such a presumption was properly applied to situations where a defense attorney operated under other types of conflicts (*id.* at 175-176; *see Torres v Donnelly*, 554 F3d at 326; *see also* Mark W. Shiner, *Conflicts of Interest Challenges Post Mickens v Taylor: Redefining the Defendant's Burden in Concurrent Successive, and Personal Interest Conflicts*, 60 Wash & Lee L Rev 965, 992 [2003]).

The United States Supreme Court has not addressed the issue since *Mickens v Taylor* (535 US 162 [2002]; *see Smith v Hofbauer*, 312 F3d 809, 817 [6th Cir 2002], *cert denied* 540 US 971 [2003]). We may nevertheless look for guidance at the approach utilized by the lower Federal Courts (*see People v Kin Kan*, 78 NY2d 54, 59 [1991]; *New York R.T. Corp. v City of New York*, 275 NY 258, 265 [1937], *affd* 303 US 573 [1938]).

One approach is exemplified by a line of cases stemming from *Beets v Scott* (65 F3d 1258 [5th Cir 1995], *cert denied* 517 US 1157 [1996]). In *Beets*, the United States Court of Appeals for the Fifth Circuit determined that the presumption of prejudice standard articulated in *Cuyler v Sullivan* (446 US at 348), is only applicable to cases involving conflicts arising from the multiple concurrent representation of clients with conflicting interests (*see United States v Job*, 387 Fed Appx 445, 450 [5th Cir 2010]; *see also* 3 Wayne R. LaFave, Criminal Procedure § 11.9 [d] [3d ed]). Under *Beets*, a defendant who asserts that his attorney operated under a personal conflict of interest must satisfy the prejudice prong of *Strickland* (466 US 668 [1984]) by demonstrating that the result of the proceeding would have been different but for the attorney's conflict (*see* 3 Wayne R. LaFave, Criminal Procedure § 11.9 [d] [3d ed]; Mark W. Shiner, *Conflicts of Interest Challenges Post Mickens v Taylor: Redefining the Defendant's Burden in Concurrent, Successive, and Personal Interest Conflicts*, 60 Wash & Lee L Rev 965, 984 [2003]).

A different approach, "with somewhat stronger support" (3 Wayne R. LaFave, Criminal Procedure § 11.9 [d] [3d ed]), is illustrated by the framework applied by the United States Court of Appeals for the Second Circuit. This approach groups attorney conflicts of interest into three general categories: per se conflicts, actual conflicts, and potential conflicts (*see Ventry v United States*, 539 F3d 102, 111 [2d Cir 2008]; *United States v Williams*, 372 F3d 96, 102-103 [2004]; *see also* 3 Wayne R. LaFave, Criminal Procedure § 11.9 [d] [3d ed]). The New York Court of Appeals has also recognized the existence of per se

conflicts (*see People v Shinkle*, 51 NY2d 417, 420 [1980]). Both courts have recognized that a per se conflict does not require a showing that the conflict either prejudiced the outcome of the case or had an effect on the representation afforded to the defendant (*see United States v Fulton*, 5 F3d 605, 611 [1993]; *see also* 3 Wayne R. LaFave, Criminal Procedure § 11.9 [d] [3d ed]).

In this case, the defendant alleges that he was deprived of the effective assistance of counsel because trial counsel represented him during the trial while operating under a conflict of interest stemming from the fact that he was the target of a criminal investigation conducted by the Office of the Suffolk County District Attorney, the same office prosecuting the defendant.

The danger of prejudice which manifests itself when a defendant is represented by an attorney who is charged with or under investigation for a crime has been widely recognized (*see Reyes-Vejerano v United States*, 276 F3d 94, 99 [1st Cir 2002], *cert denied* 537 US 985 [2002]; *Armienti v United States*, 234 F3d 820, 824-825 [2d Cir 2000]; *United States v Levy*, 25 F3d 146, 156 [2d Cir 1994]; *Thompkins v Cohen*, 965 F2d 330, 332 [7th Cir 1992]; *United States v McLain*, 823 F2d 1457, 1464 [11th Cir 1987]; *United States v DeFalco*, 644 F2d 132, 136-137 [3d Cir 1979]; *State v Cottle*, 194 NJ 449, 946 A2d 550 [2008]; *People v Edebohls*, 944 P2d 552 [Colo Ct App 1996]; *Phillips v Warden, State Prison*, 220 Conn 112, 595 A2d 1356 [1991]; *see also* 3 Wayne R. LaFave, Criminal Procedure § 11.9 [d] [3d ed]; Anne Bowen Poulin, *Conflicts of Interest in Criminal Cases: Should the Prosecution Have a Duty to Disclose?*, 47 Am Crim L Rev 1135, 1162 [2010]).

Where, as here, defense counsel is under investigation by the same prosecuting authority that is prosecuting the defendant, one of the primary concerns is whether "[t]he interests of lawyer and client . . . have diverged with respect to their dealings with that office" (*Armienti v United States*, 234 F3d at 824-825). A defense counsel who is personally the subject of criminal charges or awaiting a decision as to whether such charges will be brought may believe that he or she has an interest in tempering the defense of the client "in order to curry favor with the prosecution" (*United States v Levy*, 25 F3d at 156; *see Armienti v United States*, 234 F3d at 824-825; *see also* Anne Bowen Poulin, *Conflicts of Interest in Criminal Cases: Should the Prosecution Have a Duty to Disclose?*, 47 Am Crim L Rev 1135, 1165 [2010]). Separate criminal charges brought against the attorney "may induce the lawyer to pull his punches in defending his client lest the prosecutor's office be angered by an acquittal and retaliate against the lawyer" (*Thompkins v*

*Cohen*, 965 F2d at 332). In this regard, it is noted that "an indispensable element of the effective performance of [an attorney's] responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation" (*Ferri v Ackerman*, 444 US 193, 204 [1979]).

A lawyer who is under criminal investigation may also seek to prolong the defendant's trial, since the prosecuting authority may not wish to prosecute defense counsel until after the defendant's trial has ended (*see United States v McLain*, 823 F2d at 1464; *Rugiero v United States*, 330 F Supp 2d 900, 907-908 [ED Mich 2004]). Such motivations provide a disincentive to engage in productive plea negotiations and may otherwise improperly influence defense counsel's strategic decisions (*see Rugiero v United States*, 330 F Supp 2d 900, 907-908 [2004]). Viewed from the other direction, "the prosecutor may be less willing to offer the defendant the opportunity to cooperate if the prosecutor regards as a criminal the lawyer through whom the communication would flow" (Anne Bowen Poulin, *Conflicts of Interest in Criminal Cases: Should the Prosecution Have a Duty to Disclose?*, 47 Am Crim L Rev 1135, 1164 [2010]).

The "inherent emotional and psychological barriers" facing an attorney who is the target of criminal charges (*United States v DeFalco*, 644 F2d at 136), arise from "the attorney's obvious self-serving bias in protecting his own liberty interests and financial interests" (*Rugiero v United States*, 330 F Supp 2d at 906). "The liberty concern at issue is avoiding or minimizing imprisonment" and "[t]he financial interests include avoiding disbarment and avoiding termination of the attorney's current representation of the client in question" (*id.*). The effectiveness of an attorney who is personally facing the serious risk of criminal punishment may be diminished due to the all-encompassing distraction such a risk poses (*see* Anne Bowen Poulin, *Conflicts of Interest in Criminal Cases: Should the Prosecution Have a Duty to Disclose?*, 47 Am Crim L Rev 1135, 1164 [2010]).

"The high probability of prejudice in this situation distinguishes this personal interest conflict from . . . weaker personal interest conflicts" which have been recognized in other contexts (*Rugiero v United States*, 330 F Supp 2d at 906; *cf. Mickens v Taylor*, 535 US at 174-175). "There are few, if any, lawyers who could easily disregard the possibility of disbarment or criminal proceedings against them personally, even if their client's interests demanded it" (*People v Konstantinides*, 14 NY3d 1, 16 [2009, Smith, J., dissenting]).

"The right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the

interests of [the] client" (*Von Moltke v Gillies*, 332 US 708, 725 [1948]). When a defendant is represented by an attorney who is the subject of a criminal investigation or charge, the danger that the attorney's self-interest poses to the defendant's interest threatens one of the most basic elements of effective assistance of counsel: the attorney's duty of loyalty.

The pervasive effect that personal influences have on the entire scope of representation also bears on the ability of reviewing courts to detect their impact on the trial, rendering prophylactic protection even more important than in cases involving multiple client conflicts. Indeed, while the United States Supreme Court has noted, in the context of multiple client conflicts, that "an inquiry into a claim of harmless error . . . would require, unlike most cases, unguided speculation" (*Holloway v Arkansas*, 435 US at 491; *see United States v DeFalco*, 644 F2d at 137), it has been recognized that even "greater difficulty is presented where the conflict does not focus on a specific tactic or outcome, as where counsel . . . is the subject of an ongoing investigation" (3 Wayne R. LaFave, Criminal Procedure § 11.9 [d] [3d ed]).

Inasmuch as it is "extremely difficult" to prove that these types of personal conflicts have had a prejudicial effect on the client's case, numerous commentators have urged that such difficulties justify the imposition of prophylactic rules which dispense with the necessity of satisfying the prejudice prong usually required in ineffective assistance cases (Laurie L. Levenson, *Conflicts Over Conflicts: Challenges in Redrafting the ABA Standards for Criminal Justice on Conflicts of Interest*, 38 Hastings Const LQ 879, 907 [2011]; *see* 3 Wayne R. LaFave, Criminal Procedure § 11.9 [d] [3d ed]; Anne Bowen Poulin, *Conflicts of Interest in Criminal Cases: Should the Prosecution Have a Duty to Disclose?*, 47 Am Crim L Rev 1135, 1164 [2010]).

Indeed, at least two states have deemed it expedient to provide such prophylactic protection to its citizens so as to ensure that provided counsel is effective (*see State v Cottle*, 194 NJ 449, 473, 946 A2d 550, 564 [2008] ["an attorney who is contemporaneously under indictment in the same county as his client, and being prosecuted by the same prosecutor's office, is engaged in a per se conflict of interest" and, absent a valid waiver by the client, "the representation is rendered ineffective under (the) State Constitution"]; *People v Edebohls*, 944 P2d 552, 556 [Colo Ct App 1996] [reversing judgment of conviction and holding that a "conflict of interest exists when defense counsel has been charged with a crime and is susceptible to prosecution, during the pendency of the representation of his or her client, by those responsible for the client's prosecution"]).

I conclude that under the circumstances here, *Strickland* (466 US 668 [1984]) is "inadequate to assure vindication of the defendant's Sixth Amendment right to counsel" (*Mickens v Taylor*, 535 US at 176). Given the conflict alleged by the defendant in this case, he need not satisfy the prejudice prong of *Strickland* (466 US 668 [1984]) to demonstrate that he was deprived of the effective assistance of counsel. Accordingly, I reject the standard set forth by the Fifth Circuit in *Beets v Scott*, (65 F3d at 1260).

I further conclude that the approach adopted by the New Jersey Supreme Court in *State v Cottle* (194 NJ 449, 946 ADd 550 [2008]) is the only standard that will ensure that a defendant's Sixth Amendment rights are not violated. Simply stated, when defense counsel is under indictment or the subject of a criminal investigation by the same office prosecuting his or her client, absent a valid waiver by the client, there is a per se conflict of interest. As the facts of this case well demonstrate, a per se rule is appropriate inasmuch as an attorney's decision to conceal such matters from the client demonstrates that the attorney has already placed his or her own self-interest before the interests of the client (*cf. People v DiPippo*, 82 AD3d 786, 791 [2011]).

Applying this standard, I conclude that the Supreme Court erred in denying the defendant's CPL article 440 motion to vacate the judgment. The court denied the CPL article 440 motion on the ground that it had already determined that the defendant had received the effective assistance of counsel when it resolved the merits of his CPL article 330 motion and that the determination constituted the law of the case. The court alternatively concluded, on the merits, that the defendant failed to make a sufficient showing as to whether the alleged conflict affected his attorney's representation.

To begin, the County Court's determination that the issue of whether the defendant received the effective assistance of counsel had already been finally and conclusively decided evinces a misapprehension of the nature of that claim. A defendant's claim of ineffective assistance must be viewed as a whole and when the claim depends, in part, upon matter that does not appear on the record, it cannot be said that the entire claim could have been adequately reviewed on the record of the direct appeal so as to procedurally bar consideration of the entire claim in the context of a subsequent CPL article 440 motion (*see People v Lou*, 95 AD3d 1035 [2012]; *People v Maxwell*, 89 AD3d 1108, 1109 [2011]). Inasmuch as the defendant has presented such a "mixed claim" here by including in his motion

papers evidence which was not a part of the record on the direct appeal, "the CPL 440.10 proceeding is the appropriate forum for reviewing the claim of ineffectiveness in its entirety" (*People v Maxwell*, 89 AD3d at 1109; *see People v Brown*, 45 NY2d 852 [1978]; *People v Lou*, 95 AD3d 1035 [2012]).

Similarly, the doctrine of the law of the case does not preclude review of the defendant's claims of ineffective assistance of counsel. The doctrine of the law of the case "applies to determinations which were necessarily resolved on the merits in [a] prior order" (*Hampton Val. Farms, Inc. v Flower & Medalie*, 40 AD3d 699, 701 [2007]; *see South Point, Inc. v Redman*, 94 AD3d 1086, 1087 [2012]; *Lehman v North Greenwich Landscaping, LLC*, 65 AD3d 1293, 1294 [2009]). Use of the doctrine here is inappropriate since the determination of the defendant's "mixed claim" of ineffective assistance of counsel was not, and could not have been, resolved on the merits in the context of the defendant's CPL article 330 motion (*cf. People v Lou*, 95 AD3d 1035 [2012]; *People v Maxwell*, 89 AD3d at 1109).

Turning now to the merits of the defendant's CPL article 440 motion, I conclude that the Supreme Court erred when it denied the defendant's CPL article 440 motion. "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that . . . [t]he judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States" (CPL 440.10 [1] [h]).

Here, the defendant alleged that he was deprived of the effective assistance of counsel due to the fact that his trial counsel represented him while operating under a personal conflict of interest stemming from the criminal investigation conducted by the Office of the Suffolk County District Attorney. In support of his motion the defendant submitted sworn allegations that the Office of the Suffolk County District Attorney executed a search warrant on trial counsel's law office in January 2008, prior to the beginning of the defendant's trial in February 2008. These sworn allegations were conceded by the People in their opposition to the defendant's CPL article 440 motion.

By submitting the record of the trial proceedings, the defendant further established that he did not waive any conflict of interest, yet the investigation was not disclosed to him until after he was convicted. The People do not contend otherwise. The trial record further shows that the defendant attempted, but was unable, to place any facts relating to the conflict on the record since the County Court refused to hold a hearing and trial counsel refused to provide him with an affidavit to support his CPL article 330 motion.

The defendant also submitted documentary evidence demonstrating that approximately two months after he was sentenced, on December 9, 2008, trial counsel was summarily arrested and, that same day, pleaded guilty pursuant to a sealed plea agreement which he had already entered into with the Office of the Suffolk County District Attorney. The documentary evidence evinced numerous aspects of trial counsel's sentence which were unusually favorable.

"The practice of law has an essential tradition of complete independence and uncompromised loyalty to those it serves" (Rules of Professional Conduct [22 NYCRR 1200.0] rule 5.8 [a]). "Recognizing this tradition, clients of lawyers practicing in New York State are guaranteed 'independent professional judgment and undivided loyalty uncompromised by conflicts of interest' " (*id.*). "Indeed, these guarantees represent the very foundation of the profession and allow and foster its continued role as a protector of the system of law" (*id.*).

If there is a significant risk that the lawyer's own personal interests will so interfere with his or her representation of the client, an attorney may not continue the representation without "informed consent, confirmed in writing" (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.7 [b] [4]; *see* Restatement [Third] of the Law Governing Lawyers § 125). A lawyer is required to "promptly inform the client of . . . any decision or circumstance with respect to which the client's informed consent . . . is required" (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.4 [a] [1] [i]).

Accordingly, defense counsel is "under a mandatory affirmative obligation both to recognize the existence of a potential conflict and to alert the court to the facts and circumstances surrounding that potential conflict" (*People v Wandell*, 75 NY2d 951, 952 [1990]; *see People v Gomberg*, 38 NY2d 307, 314 [1975]). "[A]ny conflicting interests that might cloud their representation" must be disclosed "at the earliest possible time" (*People v Gomberg*, 38 NY2d at 314).

Such disclosure is necessary to allow defendants to make informed decisions when they exercise their right to select the one who will represent them against the accusations of criminal conduct brought by the State (*cf. People v Gomberg*, 38 NY2d at 312). As stated by Circuit Justice Story: "An attorney is bound to disclose to his client every adverse retainer, and even every prior retainer, which may affect the discretion of the latter. No man can be supposed to be indifferent to the knowledge of facts, which work directly on his interests, or bear on the freedom of his choice of counsel. When a client employs an attorney, he has

a right to presume, if the latter be silent on the point, that he has no engagements, which interfere, in any degree, with his exclusive devotion to the cause confided to him; that he has no interest, which may betray his judgment, or endanger his fidelity" (*Williams v Reed*, 29 F Cas 1386, 1390 [D Me 1824, No. 17,733]).

Thus, "[d]efense counsel should disclose to the defendant at the earliest feasible opportunity any interest in or connection with the case or any other matter that might be relevant to the defendant's selection of counsel to represent him or her or counsel's continuing representation" (ABA Criminal Justice Section Standards, Defense Function, Standard 4-3.5 [b] [Conflicts of Interest]). "Such disclosure should include communication of information reasonably sufficient to permit the client to appreciate the significance of any conflict or potential conflict of interest" (*id.*).

Here, trial counsel failed to fulfill his duty to communicate to the defendant matters which unquestionably bore on his ability to serve him with undivided loyalty. Trial counsel's failure to communicate with his client and fulfill his ethical obligations could only have been rooted in his desire to protect his own personal and professional interests even at the expense of the defendant's ability to make an informed choice about who would represent him.

As it has been recognized in other conflict cases, "justice must satisfy the appearance of justice" (*Offutt v United States*, 348 US 11, 14 [1954]). A "[d]efendant, and indeed the public at large, are entitled to protection against the appearance of impropriety," and the courts should not "deny defendants the right to both the fact and appearance of unswerving and exclusive loyalty on the part of attorneys who represent them" (*People v Shinkle*, 51 NY2d 417, 421 [1980]). Representation by one who is not fully committed to advancing the interests of the client is not representation at all. That the defendant was represented at trial by one who would place his interests over the defendant's interests is enough to undermine my confidence in the fairness of the defendant's trial and to subvert my faith in the result.

I conclude that the defendant sustained his burden, under both the federal and state constitutions, of demonstrating that he was denied the effective assistance of counsel due to his trial counsel's conflict of interest. Accordingly, I would grant the defendant's motion to vacate the judgment on the ground that the defendant was deprived of his right to the effective assistance of counsel (*see* CPL 440.30 [3]).