People v Krivak (2020 NY Slip Op 05226)





People v Krivak


2020 NY Slip Op 05226


Decided on September 30, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 30, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
JOHN M. LEVENTHAL
ROBERT J. MILLER
PAUL WOOTEN, JJ.


2019-06055
 (Ind. No. 39/96)

[*1]The People of the State of New York, appellant,
v
Andrew F. Krivak, respondent.


Robert V. Tendy, District Attorney, Carmel, NY (Larry Glasser of counsel), for appellant.
Cuomo LLC, Mineola, NY (Karen A. Newirth and Oscar Michelen of counsel), for respondent.



DECISION & ORDER
Appeal by the People from an order of the County Court, Putnam County (David S. Zuckerman, J.), entered May 9, 2019. The order, after a hearing, granted the defendant's motion pursuant to CPL 440.10 to vacate a judgment of the same court (William B. Braatz, J.), rendered June 11, 1997, convicting him of murder in the second degree and rape in the first degree, upon a jury verdict, and imposing sentence (see People v Krivak, 265 AD2d 343), and for a new trial on the ground of newly discovered evidence.
ORDERED that the order is affirmed.
In 1996, the defendant and Anthony DiPippo (hereinafter the codefendant) were arrested in connection with the death of a 12-year-old girl (hereinafter the victim), whose remains were discovered in a wooded area in Putnam County. While in custody, the defendant, then 18 years old, made a statement to law enforcement authorities, confessing that he and the codefendant had raped and murdered the victim.
At separate trials for the defendant and the codefendant, the People presented testimony from, among others, Denise Rose, who stated that she was present during the commission of the crimes and whose account closely matched the information in the defendant's written statement. The People also presented testimony from William MacGregor, who stated that he was present with, among others, the defendant, the codefendant, and the victim, as indicated in the defendant's written statement, but was barely conscious during the events that followed due to the consumption of drugs and alcohol.
The defendant and the codefendant both were convicted of murder in the second degree and rape in the first degree. The codefendant made a series of motions pursuant to CPL 440.10 to vacate the judgment, which were denied. However, on appeal from the denial of one of those motions, this Court vacated the codefendant's judgment of conviction and remitted the matter for a new trial on the ground that the codefendant was deprived of the effective assistance of counsel (see People v DiPippo, 82 AD3d 786, 787). Specifically, the codefendant's trial counsel had previously represented Howard Gombert, a possible suspect in the rape and murder of the victim, [*2]on an earlier rape charge. This Court determined that the codefendant's trial counsel failed to disclose his prior representation of Gombert and to "conduct even a minimal investigation" into Gombert's potential involvement in the crimes, and thus, counsel had a conflict of interest which affected his representation of the codefendant (id. at 791).
Prior to the commencement of the codefendant's retrial, the codefendant sought to admit evidence of the third-party culpability of Gombert. Specifically, the codefendant relied on, among other things, evidence that Gombert had raped and sexually assaulted other young girls and women in a similar manner to that alleged with regard to the subject victim, and an affidavit of Joseph Santoro, wherein Santoro relayed various statements allegedly made to him by Gombert while they were incarcerated together. According to Santoro, Gombert stated that the authorities were "'trying to get him for the killing of two girls'" in the Putnam County area, one of whom was the victim, but that "'they already convicted some other suckers'" in connection with the victim's death (People v DiPippo, 27 NY3d 127, 132). Santoro averred that when he asked Gombert, "'[s]o the other guys didn't do it?,'" Gombert responded that "'[e]ven if they didn't, they got no evidence against me. It's been a long time since then'" (id.). Santoro continued that Gombert "made a derogatory sexual comment about the victim, prompting Santoro to ask whether Gombert had sexual relations with her," and Gombert then relayed the details of how he had sex with the victim around the time the victim "'disappeared'" (id.). Santoro also indicated that he told Gombert he "would be better off keeping quiet," to which Gombert responded, "'[i]t don't matter now. They already got those other guys/suckers so I'm in the clear'" (id.). The trial court denied the codefendant's motion to admit evidence of third-party culpability.
During the codefendant's retrial, Rose confirmed her prior statement that she witnessed the commission of the crimes. However, MacGregor testified that he had given false testimony during the original trials and signed a false statement due to threats made to him by members of the Putnam County Sheriff's Department, and that the police had left him in a room with Rose "for her to tell the story she was given."
The jury found the codefendant guilty of murder in the second degree and rape in the first degree, and this Court affirmed the codefendant's second judgment of conviction (see People v DiPippo, 117 AD3d 1076, revd 27 NY3d 127). However, the Court of Appeals reversed the judgment of conviction and ordered a new trial on the ground that the codefendant should have been permitted to present the evidence of third-party culpability (see People v DiPippo, 27 NY3d 127). The Court of Appeals determined that "[a]lthough the evidence presented by the People was arguably overwhelming, we cannot say, on these facts, that the error in curtailing [the codefendant's] ability to present a complete defense through the introduction of third-party culpability evidence was harmless" (id. at 141). Following a third trial, at which the defense presented the testimony of Santoro regarding Gombert's statements, the jury acquitted the codefendant.
Prior to the codefendant's third trial, the defendant moved pursuant to CPL 440.10 to vacate his judgment of conviction and for a new trial based upon newly discovered evidence, including the third-party culpability evidence relating to Gombert. The County Court denied the defendant's motion without a hearing. However, on appeal, this Court remitted the matter to the County Court for a hearing and a new determination of the defendant's motion thereafter (see People v Krivak, 168 AD3d 979).
Upon remittitur, the County Court conducted a hearing, at which testimony was elicited from Santoro regarding the statements made to him by Gombert, including Gombert's statements that "they couldn't get me" for the crimes involving the victim because "[t]hey already got the two other suckers." At the close of the hearing, the court found that Santoro's testimony was "of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the Defendant." In an order entered May 9, 2019, the court granted the defendant's motion pursuant to CPL 440.10 to vacate the judgment. The People appeal.
Initially, to the extent the County Court failed to comply with the requirement to "set [*3]forth on the record its findings of fact, its conclusions of law and the reasons for its determination" as required by CPL 440.30(7), we find that the record is sufficient to enable us to intelligently review the order granting the defendant's motion, and thus, make our own findings of fact and conclusions of law (see People v Mingo, 141 AD3d 423; People v Dover, 294 AD2d 594, 595).
CPL 440.10(1)(g) provides that a court may vacate a defendant's judgment of conviction on the ground of newly discovered evidence where, insofar as relevant here, the evidence "is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant." "The power to vacate a judgment of conviction on the ground of newly discovered evidence rests within the discretion of the hearing court," which "must make its final decision based upon the likely cumulative effect of the new evidence had it been presented at trial" (People v Cain, 96 AD3d 1072, 1073).
Here, we find that the newly discovered evidence "is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant" (CPL 440.10[1][g]). A reasonable jury could credit Santoro's testimony regarding the statements made by Gombert, including that he could not be charged with the rape and murder of the victim because "[t]hey already got the other suckers," and find that such statements raise a reasonable doubt as to the defendant's involvement in the subject crimes (see People v Bellamy, 84 AD3d 1260, 1262). Moreover, had Santoro's testimony been available to the defendant at trial, defense counsel could have advanced the theory that Gombert was the actual perpetrator of the crimes, rather than merely denying the defendant's involvement (see People v Malik, 81 AD3d 981, 982). In fact, the codefendant was acquitted following his third trial, at which Santoro's testimony was admitted for the first time.
Further, although the evidence presented at the defendant's trial included the defendant's statement confessing to the crimes, the record reveals the existence of circumstances casting doubt on that statement. The portion of the defendant's statement regarding how he tied the victim's hands together was inconsistent with the testimony of a medical examiner for the People as to the manner in which the victim was "hogtied" with rope. In addition, the defendant presented testimony at trial from a polygraph examiner, who opined that the defendant was telling the truth during a polygraph examination when he initially denied raping and killing the victim. Moreover, we note that various witnesses who initially implicated the defendant and the codefendant have recanted their statements and indicated that they were coerced by the police into making a false statement. For instance, MacGregor, a prosecution witness at the original trials, has since testified that the police left him in a room with Rose "for her to tell the story she was given," and that he signed a false statement due to police threats. Thus, the defendant has a potential basis to argue that his statement was the result of a pattern of police coercion, which has a reasonable probability of raising a reasonable doubt in the minds of the jurors if presented in conjunction with Santoro's testimony (see People v Deacon, 96 AD3d 965, 969).
The People's remaining contentions are without merit.
Accordingly, the County Court providently exercised its discretion in granting the defendant's motion pursuant to CPL 440.10 to vacate his judgment of conviction and for a new trial.
SCHEINKMAN, P.J., LEVENTHAL, MILLER and WOOTEN, JJ., concur.

2019-06055 DECISION & ORDER ON MOTION
The People, etc., appellant,
v Andrew F. Krivak, respondent.
(Ind. No. 39/96)

Motion by the appellant, inter alia, to strike the respondent's brief, or stated portions of the respondent's brief, on an appeal from an order of the County Court, Putnam County, entered May 9, 2019, on the ground that stated portions of the respondent's brief refer to matter dehors the record. By decision and order on motion of this Court dated May 28, 2020, the branch of the motion which is, inter alia, to strike the respondent's brief, or stated portions of the respondent's brief, was held in abeyance and referred to the panel of Justices hearing the appeal for determination upon the argument or submission thereof.
Upon the papers filed in support of the motion and the papers filed in opposition thereto, and upon the argument of the appeal, it is
ORDERED that the branch of the motion which is to strike stated portions of the respondent's brief is granted to the extent that the following portions of the respondent's brief have been stricken and have not been considered in the determination of this appeal: (1) the second paragraph on page five through the first paragraph on page seven; and (2) the first paragraph on page 30 through the first paragraph on page 31; and it is further,
ORDERED that the branch of the motion which is to strike stated portions of the respondent's brief is otherwise denied.
ENTER:
Aprilanne Agostino
Clerk of the Court